and move on to Kirtz v. Trans Union No. 21-2149. Good morning, Your Honors, and may it please the Court, I'm Nan Bin-Joshi for Appellant Reginald Kirtz. My co-counsel, Matthew Weisberg, is unfortunately unable to attend because he's out with COVID, but he sends his regrets. We're here to talk about the Fair Credit Reporting Act, which defines the term person to include any government or governmental agency. Now, that definition unambiguously covers federal agencies such as defendant United States Department of Agriculture here. And when that definition is applied to the civil liability provisions of the FCRA, Section 1681 N and O, it unambiguously authorizes actions against any person that violates the act, including any governmental agency. Now, neither of these points is in dispute. Instead, what the government argues is there is ambiguity as to whether the definition applies to Section 1681 N and O. But there is no ambiguity in the statutory text. And statutory definitions control absent exceptional circumstances, and the government points to no exceptional circumstances in this case. The government points to exceptional circumstances in other cases. How should that influence us? If we are troubled by the possibility of the government being criminally liable or subject to punitive damages or something like that, is that an argument for reading the statute more narrowly in general, or is that something we should avoid doing here? Well, I don't think the court needs to address other provisions in this case. If, assuming there are problematic situations, for example, in the criminal context of applying the definition as written, there are principles that those would be one of the exceptional circumstances, perhaps an absurdity would allow the court to disregard the plain text and say that's not what Congress could have intended. So it could mean something different just case by case, but we shouldn't try to apply a consistent definition of person. Right. Well, the court should have tried to apply the definition because that's what the statute commands. But if we're going to say we don't use that definition in criminal cases or in punitive damage cases, then it seems that we don't have a consistent definition, and it seems then that there would be some ambiguity or at least problem with the definition that we aren't going to apply consistently. So I don't think that's a logical leap. The fact that there are situations where courts are permitted to ignore the text leads to the conclusion that where those situations are not present, the court can still disregard the text. I mean, there are canons that say we'd like a term to have consistent meaning throughout a statute, especially a defined term. That's one of the reasons why we define a term, so it would have consistent meaning throughout a statute. And then if we say in the criminal context it doesn't mean the United States or federal agencies, but it does in other contexts, that's not consistent. That's a bit of a problem. Well, the presumption is the term should be consistent, but that's not an irrefutable presumption. And once again, the way you refute that presumption is by pointing to instances where there is a problem. The difficulty for the argument on the other side in this case is they haven't pointed to anything where there's a problem applying the term person to the civil liability provisions. There's no absurdity there. There's no conflict with the regulatory scheme or undermining of the regulatory purpose. In fact, as we pointed out and I think is uncontested, it advances the regulatory purpose. Okay, I hear your response, but that doesn't necessarily solve a consistency problem. I thought the direction that you were going to go would be something like this. The definition should be the same throughout the statute. But when we begin to use, when we begin to apply that definition in the criminal context, we bend that criminal provision. Or when we apply it in the punitive damages context, we bend that punitive damages provision because those would then be inapplicable, not we bend the underlying definition. Is that just a form issue or is that? Yeah, I apologize if I wasn't clear. I was just trying to answer the hypothetical. But, yes, that's the argument we made in our brief. We think a lot of the arguments in the government's brief and in the cases that go in the government's favor about the problematic aspects of applying the definitions throughout the FCRA, most of those are overblown. I'll concede the criminal one presents more difficult issues. Even there, I think applying the definition, for example, to cover a governmental corporation that's an arm of the state would probably be less problematic as opposed to, say, suing the, criminally charging the state of Pennsylvania or the United States of America. So I think even there, you apply the definition and assuming that sort of case ever came up, the court would have to decide whether it's absurd or permissible. But none of that should really affect how you interpret 1681N and O because, once again, there is no reason, justification the government's given to disregard the plain text. And that is how I think the Supreme Court faced the same situation or very analogous situation in Sebelius v. Clore. The government sort of made the same argument as they're doing here, which is if you apply the statute of limitations to the attorney's fees provision, well, then you have to apply it to the compensation provision of the National Childhood Vaccine Compensation Act. I'm not sure I have that name exactly right. And the court in footnote 4 of that case said, no, well, look, it's absurd to not apply the statute of limitations to the compensation provision. There's no absurdity in applying it to the attorney's fees provision. And so we're going to apply the plain text, which did not limit attorney's fees to timely filed petitions. And that's really the same case here. The government's point to supposed incongruities or problematic aspects of applying the definition to other provision. They're trying to leapfrog into saying that's how you should construe 1681N and O. Let's look at the analogy of the ECOA, because there with a person we have virtually identical terms. But in concluding that a person includes government for purposes of civil liability under 1691A, part of the reasoning is that there's nothing like that in the statute before us. Do we need that subsection B to reach that conclusion about the interpretation of A? Or does A standing alone convey Congress's intent to impose civil liability on the U.S. government? No, I think that's right. The Equal Credit Opportunity Act is the most analogous statute to this one. Almost the same definition. Almost the same administrative enforcement mechanism. Almost the same civil damages provision. There is this carve out, which makes I think the government's case strike slightly stronger. Because it still relies on an implicit inference that because Congress carved out punitive damages, it must have meant to cover the government. And the only way that Congress could cover the government in that case is through the statutory definition. And the Fair Credit Reporting Act and the Equal Credit Opportunity Act were both adopted within three years of each other. This statute was adopted two years after the Truth in Lending Act, which also uses a similar definition. It has a few more carve outs than the Equal Credit Opportunity Act. They're all part of the same Consumer Credit Protection Act. So Congress, when it wanted to create exceptions, knew how to do that during that time period. So what do we see in the FCRA that can give us similar assurance? Well, I think the, I mean, our argument depends and focuses on the plain text. I think the other thing is simply the statutory purpose, which was Congress was concerned about the accuracy of credit reports. It wanted to give consumers the ability to challenge any item of information that's in 1681I. It didn't separate out government furnished information. But doesn't your interpretation read the carve out in ECOA into the FCRA? I don't understand. We don't make an argument that punitive damages is not. Oh, okay. So you think you could get punitive damages against the government? Maybe perhaps the government has a separate argument as to why punitive damages. So that's why criminal is your biggest problem. You don't have a problem with punitive damages because you think since there's no carve out, you could still get those against. Yes, at least the government doesn't have exemption based on the definition of person. Perhaps they have some other argument if they were faced with that situation. But that's right. So we don't. I think the criminal, and really just because no sovereign to my knowledge has ever been criminally indicted. There's no developed law on that issue. So I can't, you know, counter the fact. You're basically saying it's a null set. Exactly. So you're saying don't read a statute in a way that's trying to give a huge accounting for a null set. Right. In that situation, perhaps even the clearest of congressional tests would not be sufficient to get a court to convict the United States of crime. So I don't think that's a question of really applying the plain text or not. It's more of an absurdity question, whether it's just the notion of doing that is absurd. And once again, I want to emphasize that even if the court wanted to reach that issue, and I don't think it needs to, none of that should affect the court's interpretation of provisions where applying the definition makes perfect sense and advances the purposes of the statute. And so that's, I think the government's only other real argument is based on silence in the legislative history. I just don't think that's something the court can take into account after Delmuth and after Kimmel and certainly after Nordic Village. I mean, the Supreme Court's been pretty emphatic that legislative history is irrelevant to the statutory. The question of whether a statute is ambiguous, if there were a committee report in this case that said we intend the definition to apply to the government, it doesn't change the interpretation of the statute. Let me ask you about an aspect of that argument by the government, because one of the things that they are urging is that there wasn't liability for the government for a good 25 years based on the 1970 statute. And if Congress was going to suddenly open the floodgates to liability for the U.S. government, they would have done so in a way that was more clear and explicit. What is your position on whether the statute pre-'96 did create liability for the government? And I'm curious specifically about the statute having liability for users and only persons being users and only users obviously receiving credit reports. The only way to receive a credit report under the statute is also to be a person, which would seem to include the government even under the old statute. So what is your view as to whether there was even pre-'96 exposure of the federal government as a user? Right. So pre-'96, the cause of action was limited to consumer reporting agencies, which was defined in terms of persons, but the government probably didn't meet that definition of consumer reporting agency because of the other elements, and also users. I'm not sure of any case that addresses whether pre-'96 the government was a user. That is an undefined term in the statute. So I think the government would have a stronger argument that if it's an undefined term, that's not sufficiently explicit. However, I believe in the 1996 amendment, Congress didn't define user but did talk about users in terms of persons. So perhaps the government has a less strong argument now if it wanted to argue that it is not a user. So I think however the court views that, the key distinction would be once again the language of the statute, the fact that user is not defined but in context includes persons implicitly and I think now explicitly in the statute. I understand you're not pressing too hard on legislative history types of arguments. But what is any significance should we attach to the fact that the statute was amended a couple of times after the Seventh Circuit's decision in Bourne and there was nothing put into the statute that would suggest it was clarifying the government was not exposed? Well, yeah, we don't, I mean, honestly I don't think there's much significance. There was Bourne's and then recently, I think in the last three years, there's been three cases, Robinson, Daniel, and then recently Mower and the D.C. Circuit. So those have happened pretty rapid fire to create the current 2-2 split. I think the court's focus really should be on the statutory text and whether the government has shown that there's an exception that, I mean, I don't think the government has shown that there's an adequate basis in statutory interpretation to disregard the plain language and interpret the words in a way that would exclude the government from the civil liability provisions. Well, we have two of our sister circuits that have come out one way and two another. Why isn't that the definition of ambiguity in the statute? Well, a lot of the cases involve dissenting opinions and split decisions. I think, I believe it was Union Gas in the Supreme Court that said that's not really a consideration. Reasonable judges can reach different conclusions about whether a statute is ambiguous, but the head count does not answer the question of what the words actually mean and whether there is more than one possible interpretation of it. I'd like to reserve the rest of my time for rebuttal. Thank you. Mr. Stern. Thank you, Your Honor, and may it please the Court. The, I think that the point here is not sort of to go through on a, like each entity, and every step that indicates that Congress did not make the United States or states a person for purposes of this provision. It's to look at them all together. I mean, that's what the Supreme Court has told us we need to do, and the question here is ultimately to determine what it is that Congress meant. It's a waiver of sovereign immunity. The government doesn't dispute that it's a person for purposes of the substantive provisions, right? I think that it would, we don't dispute that it's a person for relative, at least for some substantive provisions. There are a lot of provisions in this statute. You know, I don't want to say that the government is a person for all of them because some of them may be at odds with other governing rules or other than a very specific ruling about the provision that's at issue in this case. And so we have to go back and look. We have a 1970 statute, and then 26 years go by. And the statute that gets enacted in 1996 is not just a minor amendment to the 1970 statute. In effect, it is an entirely new statute. It imposes a vastly new and more complex array of duties, and it imposes all sorts of penalties that were never present before. And the question is, when Congress did this, did it mean to say that for these penalty provisions, these would apply to any government entity, the United States, or a state? And every indication, we think, points to the contrary. Well, let me ask you about this. I don't think every indication is to the contrary. There are at least two provisions in 1681A and N where Congress chose to use natural person. Right now, not dispositive, natural person could just be something about excluding corporations, but Congress did vary which term it was using in which place, and it put an explicit definition in here. So I don't see, if we're supposed to treat these as significant, doesn't this suggest that Congress, it knew how to carve out governments and corporations when it wanted to, and yet here, the most straightforward reading is, person is defined to include governments. Your Honor, I submit that it indicates something very much to the contrary, which is, of course, everyone understood that corporations were covered by this statute, and there's a distinction between natural persons and corporations that's being drawn. Congress didn't need to draw that kind of explicit distinction with respect to government, with respect to the United States and the states, unless it thought that it was there to begin with, and again, I think that if, like, we look through, I think that there's an agreement that it can't be a person for all provisions. Why not? The best one you've got is criminal. Now, maybe a prosecutor wouldn't bring it, but is it impossible for a government entity to be criminal? I mean, I could imagine a local sewer district, water district being prosecuted as having turned into a RICO enterprise to effectively extort campaign contributions, so is it so ridiculous that we then have to read it out of criminal liability and then bootstrap it to read it out of civil liability as well? I think the answer is yes, it is absurd, and it's not a question of bootstrapping. What we have, like, what we're not trying to do is to, like, sort of parse through to say, well, like, criminal, that's doubtful. You know, punitive damages, that's even maybe not quite as doubtful, but that's unusual. Investigations by the Federal Trade Commission or the CFPB, well, that would be unusual. Investigations by state attorney generals, well, that's odd, so we start looking, and it's not a question of going through each and every one of these things. The question is, taken as a whole, what is it that Congress thought it was doing? And we also have, and I would like to emphasize, because like the other decisions in our favor, while they make many good points, none of them talk about the Privacy Act. And particularly in this case, the Privacy Act covers the same conduct as is at issue in this case. The Privacy Act was a statute that was much debated whether or not, where and to what extent damages were going to be available against the United States for conduct, including the kind of conduct that's at issue here. And Congress said only, like, only certain kinds of conduct, and in a case like this one, you would have to demonstrate willful behavior in order to even get, to try and get damages, and they would have to be actual damages. I'd like to test that theory and just make sure I understand what you're suggesting are areas of overlap between those statutes. Because in terms of the information that's covered, the FCRA covers consumer reports, the Privacy Act, do I understand correctly, it covers the reports of, reports concerning individuals within government agency files, right? It's different subject matter. I mean, there is, I should have written it all down so I could tell the court, but the, like, the Privacy Act would cover all the, like, government is, I mean, like, is obliged to provide information in certain circumstances. And if the government, like, applies mistaken information, the sort of person involved can, as in this case, could point it out, and then the government is supposed to take corrective action. But just to be clear, it covers different data, it covers different information, is that right? I don't think so, but I'm sorry, Your Honor, I just don't. The Privacy Act generally provides location-based protection. It protects records within a system of records. Yes, that's correct. And so I think what Judge Krauss is asking is, because the Privacy Act provides location-based protection, and this statute provides substantive protection, it could be that substance might not be protected if it was in the wrong location under the Privacy Act. So I think what should, because not all government information is in an agency system of records. Because agencies have to list their system of records, they have to publish them in the Federal Register. There's a litany of things that agencies have to do to qualify under the Privacy Act. Sometimes they might not do all of them. As government litigators are well aware. Am I right that under the FCRA, the duty is triggered by notice that comes from a credit reporting agency, not an individual? Under the Privacy Act, it's triggered by a request by an individual? Yes. My point here is not that it is an identical overlap, right? It's that we're looking at a series of things that give you indications of how Congress thought about it. The way Congress thought about it is it has just this beautiful generic definition of person in the Dictionary Act. And it says this is what person means. And it has it, 1 U.S.C. 1. And then in 1681 A.B., it says we're going to use a different definition of person. The Dictionary Act doesn't include governmental agencies, but 1681 A.B. says, yes, we're going to use them. And so if we want to know kind of what Congress is thinking, it just seems strange to me that they would say we don't want government agencies subject to this. Because they had that option. If they did nothing, if they gave no specific statutory definition, then it would be exactly what you say. And so it's very weird when Congress has the ability to do nothing and get the result that you want, and then they do something to say, no, no, it's still the result that we want. Your Honor, that's, of course, plaintiff's case. I'm not saying that it's not a case. I mean, I understand that because usually that's exactly the mode of this. We're all enacted at the same time, say, or whatever. You know, it looks different. The question here is it's like Congress made the definition that it did with respect to the 1970 statute. The question is when it essentially acted a new statute 26 years later, did it expose in a way that it did in the 1970 statute? Did it expose the United States states or government agencies to those criminal or that whole series of provisions, including period? Do you think we bypassed the 70 Act, that its principles don't remain relevant? I'm very surprised Congress didn't repeal that. It didn't repeal these definitions. I think we have to treat them as carrying forward. Well, I mean, look, the look, you know, the the employees of Department of Public Health case, right? Like, you know, which was, you know, on like the books in which like has the equivalent for a state. The statute is amended and it sort of to include states were that the case, it would have been subject to monetary damages. The Supreme Court looks at it and says, I don't see any indication that Congress meant to do that. Therefore, I'm not like construing it to have done that. That's what we're saying here. Yes, you could be. There's no doubt that the literal definition as it would follow through that way. We're saying that a court real question and, you know, you know, the court could conclude, no, Congress meant what it said. And unless it said something different, we're sticking with that. How should we think about the East, the ECOA and the role of the ECOA in interpreting person for the FCRA? Because when when these amendments are enacted in 1996, it includes cross references to the ECOA. And you're asking us to assume that Congress was not aware that there was the United States and its agencies being read into the term person when the statute that's being cross referenced and in the same legislation makes very clear that there's liability for the U.S. government as a person. That's absolutely right. The that's a very targeted, explicit statute. And as your honor pointed out earlier, like when you're construing it, like there is an explicit carve out for punitive damages. And that's what the Office of Legal Counsel found to be extremely important. That's what we said to the courts, which agreed the point. The as far as that goes, what's relevant here is that there is no car that you have to look. It's all in the same provision. So we've got we've got 1681 B, right. That that has a carve out for agencies or departments of the United States government where consumer reports have been requested for purposes of employment. We've got 1681 G that that talks about the carve out for enterprises. We've got 1681 I that is explicitly has a carve out again for the government. And 1681 A.Y., the FBI provision that also carves out the United States. Well, we also have the provision in 1681 U that explicitly refers to the United States. But the point. OK, but you put a lot of weight on that one, but that comes very close to creating a magic words requirement. I understand that. And it's like in Judge Katz's, you know, in his opinion, makes that point. And we totally agree that standing alone like 1681 U like would not like in and of itself like point to court, you know, to go in another direction. What we do think is important is this is a essentially new statute. One can like like give like legislative history, whatever do what wants to. We think you can just as clean cases like we bought laundry. We said when there's going to be improbable results, the court should avail itself of all material. And so what we have are twice. We have the scoring of the CBO and what and which indicates that the costs resulting from these amendments were going to be small. And it explains what like and they were going to be because the FTC was going to be taking certain enforcement action. Not charged with it. I don't think we can put a lot of weight on the CBO scoring of this or on these for that matter. Your Honor, again, it's not the it's like we can go through and go this one or that one or that one or that one taken individually. None are dispositive. I agree. Taken together, they all point in the same direction. And one would expect there to be at least a sentence of legislative history. If Congress were undertaking this kind of expansive endeavor. There is not a sentence of legislative history to indicate that. Also, look, this is an actor about two or three months after Seminole tribe. The you know, which had just made clear that you can't like impose like monetary liability on states under the Commerce Clause. I think that they're just a series of things that all point in one direction. And it's like the public employees case. It's like Library of Congress versus Shaw. And I do think that cases like Brown and Williams and for that matter, King versus Burwell tell us we look at the statute in its entirety with respect to all of its provisions. And particularly that's the case here where we have essentially a new statute being enacted 26 years after the first statute. And that's when you look and you go, OK, we really think Congress meant to do this. I think the answer is no, Congress did not mean to do that. And the question is, are there rules of construction that say, well, we don't you know, we've got to stop somewhere short of that. I think that the answer is no. And I think that's what the case boils down to. We think that all of those things are things that the court should look at and they all come to one conclusion taken together. Thank you very much. I'd like to hear what you have to say about the Seminole Tribe situation and what the law was at the time when the 96 was enacted. Sure, I mean, the Seminole Tribe came out just a few months before the 96 Amendment. You can debate whether that time period was short enough that Congress would have taken into account. I don't think it influences the decision here. Everyone concedes the Seminole Tribe perhaps prevents Congress from abrogating state immunity. It does not prevent Congress from creating an explicit cause of action against states where states waive their immunity or there's some other basis for not having immunity. And so the clarity with which Congress spoke still has application to the states. I mean, Congress could not be ambiguous and still have a cause of action against the states, even in a situation where there was a waiver of immunity. So just a few brief points. I don't think the government had asked this court to sort of holistically look at all these provisions together. They never respond to our argument that if their definition of person is correct, FTC and CFPB would not be able to enforce the provision, the FCRA against the states or localities because their enforcement provision is tied to the term person as well. I think their argument boils down to a reverse presumption. Usually the presumption is Congress knows the law when it passes legislation, but they are arguing, the government is arguing here that Congress was sort of ignorant of the definition of person when it passed the 1996 Amendment. Even though we know in the Truth in Lending Act and the Equal Credit Opportunity Act, Congress understood what the definition meant because it created these carve-outs that the government concedes show that the government can be liable. So I just think that's the wrong presumption that courts apply. But your case would be stronger, right, if there was a carve-out for the criminal prosecution for the government? Yes. I mean, I think any additional bit of information could make our case stronger. Ultimately the question is, I think as the Supreme Court mentioned in Union Gas, each statute needs to be taken on its own terms. They're all drafted differently from what I see in the case law. So I think ultimately the question boils down to the question of whether the provisions of this statute are ambiguous or unambiguous. I would also point out with respect to the government's argument that these provisions produce somewhat anomalous results. The government isn't really challenging the outcome of applying the definitions to other provisions of the statute. What they're saying is Congress should have spoken more clearly, used different language. And I think that does, as Judge Bivas said, gets back to the magic words test. It's not the outcome that's problematic in the government's view. It's the fact that Congress used simpler words to achieve those outcomes. The Court has no further questions. Thank you for your time. Can you address your colleague's argument that there would be duplication here between the FCRA and the Privacy Act? There is a slight bit of overlap. The Privacy Act does cover a different set of obligations for government records on individuals versus the FCRA, which is focused on consumer reports. And I don't think the government's arguing that somehow the Privacy Act supersedes the FCRA. I think they both govern why they both govern. I think the government's argument is Congress really debated liability in the Privacy Act when they were passing the Privacy Act, and Congress wrote the cause of action in a different way. And therefore, implicit in that, the Court should assume that Congress meant a different outcome because the legislative history focuses more on private entities and because FCRA is drafted differently, uses the term person as opposed to limiting liability to the government because of the obviously more general reach of the FCRA. The 1996 amendment did not carve out the government from substantive obligations under the FCRA, despite the existence of the Privacy Act. So I think ultimately it's a question of the drafting differences between the two statutes and the government's attempt to try to make some kind of inference from that. And I don't think that's a logical leap. Thank you, Your Honor.